# United States Court of Appeals for the Federal Circuit

05-3075

KEVIN F. CORADESCHI,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Thomas G. Roth, of West Orange, New Jersey, argued for petitioner.

Brian S. Smith, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and William F. Ryan, Assistant Director.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3075

KEVIN F. CORADESCHI,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

_____

DECIDED: February 27, 2006

_____

Before MICHEL, <u>Chief Judge</u>, GAJARSA, and LINN, <u>Circuit Judges</u>.

GAJARSA, <u>Circuit Judge</u>.

Kevin F. Coradeschi, a former employee of the Transportation Safety Administration ("TSA"), petitions us to review the Merit Systems Protection Board ("MSPB")'s dismissal of his appeal for lack of jurisdiction. On June 28, 2004 an administrative judge ("AJ") with the MSPB issued an initial decision finding that the MSPB had no jurisdiction to hear Coradeschi's appeal because he had not completed the required trial period and therefore was not an "employee" pursuant to 5 U.S.C. § 7511. The Board declined to review the AJ's decision, and it became final on November 23, 2004.

## I. BACKGROUND

Coradeschi began federal service with the U.S. Coast Guard upon graduation from the Coast Guard Academy in 1983. He served six and a half years with the Coast Guard and one year with the Naval Investigation Service, after which he worked five years as a private investigator. He reentered federal service in 1997 as an inspector with the Immigration and Naturalization Service ("INS"). After one year, he became an INS agent, which he remained until June of 2002.

While an INS agent, Coradeschi held an 1801 occupation code. His position description indicates that some of his major duties were to enforce immigration laws and arrest illegal aliens. As part of those duties, he had to interpret the laws and make determinations regarding alienage, immigration status, and deportability. Moreover, Coradeschi was required to carry a firearm.

On June 23, 2002, Coradeschi received an appointment with the TSA as a Civil Aviation Security Specialist, also known as a Federal Air Marshal ("FAM"). His offer letter, which he signed and dated on June 18, 2002, contained a paragraph stating, "All Federal Air Marshals must serve a probationary period to be completed 12 months after the granting of credentials and receipt of a Top Secret Security Clearance." However, Coradeschi's "Notification of Personnel Action," effective five days later, states that his appointment is "subject to completion of a 1-year trial period beginning 06-23-2002. Service counting towards permanent tenure from 6-23-2002." Coradeschi states that he was advised that he would not be subject to a probationary period because as an INS agent he had the same 1801 occupational code as a FAM and TSA Policy Bulletin #6 concerning probationary periods for FAMs (the "TSA Bulletin"), which was effective

January 24, 2002, granted an exception to the new probationary period "for current Federal employees who are appointed to FAM positions from within the same series, i.e. an employee currently in the 1801 series."[1]

After he started work as a FAM, Coradeschi underwent a seven-day Air Marshal Training Program. According to Coradeschi, this advanced training included over 31 hours of administrative matters, 12.5 hours of firearms training, and 13.75 hours of tactical and operations training. Normally, new FAMs were first required to attend the Criminal Investigator Course at the Federal Law Enforcement Training Center; however, the TSA waived this requirement for Coradeschi because of his INS agent training.

On June 23, 2003, a year after being hired, Coradeschi received another "Notification of Personnel Action" that indicated his trial period was complete and his tenure group had changed. Two months later on August 20, 2003, he received his Top Secret Security Clearance.

On January 7, 2004, Coradeschi failed to remove a fully-loaded magazine of ammunition from his person upon arrival at Tel Aviv, Israel, contrary to his team member's instructions to place his weapon and ammunition in a lockbox. When he returned to the airport on January 9, 2004, he was detained by security screeners. Considering this violation, two prior "firearms incidents," and a previous verbal

---

[1] The TSA Bulletin provided in the record submitted indicates it was cancelled on December 3, 2003.

counseling, the Assistant Special Agent-in-Charge at the Newark Field Office, Tim Masluk, terminated Coradeschi on February 10, 2004.

The termination letter indicated that Coradeschi was a probationary employee because he had not completed 12 months as a FAM after he was granted credentials. The letter, however, indicated that he could appeal to the MSPB if he felt that he was "a non-preference eligible[] who ha[d] completed two years of current continuous service in the same or similar positions in an Executive agency."

Upon appeal to the MSPB, the AJ dismissed Coradeschi's appeal. The AJ found that Coradeschi's previous INS agent work was not sufficiently "similar" to the FAM position to grant jurisdiction under 5 U.S.C. § 7511(a)(1)(C)(ii). Despite finding that both positions involved law enforcement and shared the same 1801 occupation code, the AJ found several dissimilarities, including: an INS agent enforces immigration laws at his office and at a variety of business establishments, whereas the FAM deters criminal acts onboard aircraft; the FAM must undergo specialized training for the close confines of an aircraft and obtain top secret security clearance, whereas the INS agent does not have to do either; and finally, unlike the INS agent, the FAM must be physically capable of "long, arduous hours of international air travel." Thus, the AJ concluded that Coradeschi had not established jurisdiction by pleading non-frivolously that the INS agent position was "similar" to the FAM position. The AJ did not hold an evidentiary hearing to ascertain and determine whether the allegations made regarding the probationary period termination and previous INS work were sufficient to invoke MSPB jurisdiction and require a merits hearing.

Once the MSPB's decision became final on November 23, 2004, this appeal followed. We have jurisdiction over this petition pursuant to 28 U.S.C. § 1295(a)(9).

## II.  DISCUSSION

### A.  Standard of Review

We must affirm an MSPB decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c)(1)-(3).  We review whether the MSPB has jurisdiction over an appeal de novo.  See Butler v. Soc. Sec. Admin., 331 F.3d 1368, 1371-72 (Fed. Cir. 2003).

An appellant to the MSPB must prove jurisdiction by a preponderance of the evidence, see 5 C.F.R. § 1201.56(a)(2)(i); however, when jurisdiction is factually disputed and jurisdiction cannot be determined by the documentary evidence, the MSPB should hold an evidentiary hearing to resolve the jurisdictional question once the appellant has made non-frivolous allegations that jurisdiction is proper.  See Garcia v. Dep't of Homeland Sec., ___ F.3d ___ (2006) (en banc); Pervez v. Dep't of the Navy, 193 F.3d 1371, 1375 (Fed. Cir. 1999); Manning v. MSPB, 742 F.2d 1424, 1427-28 (Fed. Cir. 1984).  Thus, we must review the record de novo and determine whether Coradeschi has made non-frivolous allegations that he was an employee and should therefore be granted a hearing where he may present further evidence that he meets the § 1201.56 jurisdictional burden.

B.    Statutory Authority

"An employee . . . may submit an appeal to the [MSPB] from any action which is appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7701(a). Congress provides MSPB jurisdiction over TSA employees through 49 U.S.C. § 114(n), which adopts the FAA's unique personnel management system established under 49 U.S.C. § 40122.  Pursuant to § 40122(h) and (i), an employee of the FAA, and by adoption the TSA, may contest a major personnel action, such as removal, through either (1) contractual grievance procedures, (2) the agency's own internal process, or (3) "under section 40122(g)(3)."  Section 40122(g)(3) states,

> Under the new personnel management system . . . an employee of the Administration may submit an appeal to the Merit Systems Protection Board and may seek judicial review of any resulting final orders or decisions of the Board from any action that was appealable to the Board under any law, rule, or regulation as of March 31, 1996.[2]

As of March 31, 1996, an "employee" may appeal his or her removal action to the MSPB under 5 U.S.C. §§ 7512(1), 7513(d).  Accordingly, TSA personnel who meet the definition of "employee" under 5 U.S.C. § 7511 may appeal his or her removal action to the MSPB.  See 5 U.S.C. §§ 7511(a)(1), 7512(1), 7513(d); Van Wersch v. Dep't of

---

[2]    Originally, the provisions of § 40122 referring to the FAA's personnel management system did not provide for adverse action appeal rights to the MSPB.  See Department of Transportation and Related Agencies Appropriations Act, Pub. L. No. 104-50, § 347, 109 Stat. 436, 460 (1995)(prior to 2000 amendment); Allen v. MSPB, 127 F.3d 1074, 1076 (Fed. Cir. 1997).  On April 5, 2000 the statute was amended to add subsections (g)(3), (h), and (i) that restore certain rights to appeal actions to the MSPB.  See Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106-181, §§ 307(a), 308(b), 114 Stat. 61 (2000) (codified as amended at 49 U.S.C. § 40122(g)); see also H.R. Rep. No. 106-167, pt. 1, at 122 sec. 705 (1999) (noting that the purpose of this subsection was to "give the employee the further option of appealing [adverse personnel actions] to the [MSPB]"); S. Rep. No. 106-9, at 36 sec. 425 (1999)(noting the purpose of restoring "the right of FAA employees to submit appeals to the MSPB."); H.R. Rep. No. 106-513, at 182 (2000)(Conf. Rep.).

Health & Human Servs., 197 F.3d 1144, 1146 (Fed. Cir. 1999); Connolly v. Dep't of Homeland Sec., 99 M.S.P.R. 422, 424-25 (2005); Goldberg v. Dep't of Transp., 97 M.S.P.R. 441, 443 (2004); Miller v. Dep't of Transp., 86 M.S.P.R. 293, 298 (2000) ("[W]e find that section 307 of the Ford Act is effective beginning April 1, 1996, and provides Board appeal rights to FAA employees from any action that was appealable to the Board as of March 31, 1996."); see also Stella v. Mineta, 284 F.3d 135, 143 (D.C. Cir. 2002) (noting the MSPB's position).

Here, Coradeschi argues that he falls within the § 7511(a)(1)(C)(ii) definition of "employee."[3] That subsection defines employee as "an individual in the excepted service (other than a preference eligible) . . . who has completed 2 years of current continuous service in the same or similar positions in an Executive agency . . . ." § 7511(a)(1)(C)(ii) (emphasis added). Coradeschi has successfully made non-frivolous allegations that he is in the excepted service, but he has completed only 20 months of service as a FAM. He must therefore, establish that his prior position as an INS agent was "similar" to his subsequent position as a FAM.

C.    "Same or Similar Positions"

Coradeschi argues that the AJ improperly denied him an evidentiary hearing on the issue of MSPB jurisdiction through § 7511 and § 7513. Specifically, he contends that he made a non-frivolous allegation that his position as an INS agent was similar to his position as a FAM under § 7511.

---

[3]    At oral argument Coradeschi conceded that he was not an employee as defined by § 7511(a)(1)(C)(i).

To meet the "similar positions" test, the employee must "occupy positions that involve related or comparable work that requires the same or similar <u>skills</u>." <u>Mathis v. United States Postal Serv.</u>, 865 F.2d 232, 234 (Fed. Cir. 1988) (emphasis added). In <u>Mathis</u>, we reversed the AJ's finding that a postal employee's positions as a special delivery manager and subsequently as a distribution clerk were not "similar positions" for purposes of § 7511. <u>Id.</u> at 233. There, we stated that the AJ improperly narrowed the meaning of "similar positions" by focusing on "certain differences in the work the two jobs involved, as specified in the position descriptions." <u>Id.</u> The AJ in <u>Mathis</u> found that the two positions were dissimilar because "the 'main function' of a special delivery messenger 'is to deliver' the mail 'after it has been sorted,' and not to 'distribute it within the facility [the Post Office],' which is the function of a distribution clerk." <u>Id.</u> We rejected that finding and held that "the critical fact is that the petitioner handled the mail" and that the skills required to perform mail handling in both positions were closely related. <u>Id.</u> at 235. There was no indication that the employee was unable to perform his new duties or that he was required to undergo extensive retraining. <u>Id.</u> "The fact that he did that handling in different physical locations and in different steps of the mail distribution process did not alter the fundamental character of the work he did, which was sufficiently closely related in the two jobs to make those positions 'similar.'" <u>Id.</u>

Accordingly, the MSPB has interpreted such language to mean a position is similar "if experience in a position demonstrates the knowledge, skills, and abilities required to perform the work of the other job." <u>Shobe v. U.S. Postal Serv.</u>, 5 M.S.P.R. 466, 471 (1981); <u>accord</u> <u>Mathis</u>, 865 F.2d at 234; <u>Spillers v. U.S. Postal Serv.</u>, 65 M.S.P.R. 22, 26 (1994).

Furthermore, the TSA's own Human Resources Office defines "same or similar positions" for its own probationary period. TSA Management Directive No. 1100.31-1 on Trial Periods effective February 4, 2004 ("TSA Directive")—a week before Coradeschi was terminated—defines the term "same or similar positions" to be "[p]ositions that would be classified in the same occupational series and requires substantially the same or similar qualifications." TSA Directive § 4(E).

Here, Coradeschi maintains that he has sufficiently made a non-frivolous allegation that his work as an INS agent was the same or similar to his work as a FAM. We agree.

From the limited evidence presented without even a hearing, it appears that both positions required Coradeschi to apprehend and subdue criminals, carry and be proficient with a firearm, and investigate criminal activity. Moreover, both positions carried an 1801 occupation code, a fact that seems important in both the TSA Bulletin in effect when Coradeschi was hired and the TSA Directive in effect when he was terminated.[4]

The AJ and the government place too much emphasis on job description dissimilarities, such as the fact that FAMs enforce criminal laws primarily in the confines of planes while INS agents enforce immigration laws primarily within business establishments and the fact that FAMs undergo specialized training for work onboard

---

[4] Though the TSA Bulletin and TSA Directive are helpful in defining the TSA's view of what is similar to a FAM, we recognize that these are not dispositve determinations because they are neither factual determinations nor legal interpretations of § 7511.

aircraft. Furthermore, the AJ noted that FAM incumbents must obtain a top secret security clearance.

While these differences are real, they fail to overcome Coradeschi's allegations that the skills and fundamental character of both positions were closely related. Both positions required firearm proficiency and the ability to enforce laws and apprehend criminals. Even though Coradeschi was required to undergo specialized FAM training, there is no evidence to suggest the retraining was "extensive" as Mathis requires. 865 F.2d at 235. In fact, Coradeschi alleges that less than 15 hours of the training was substantively new training. Furthermore, he alleges that much of the training was waived because of his prior experience.

Like Mathis, the fact that Coradeschi performed the same skills in two different physical locations, i.e., a plane as opposed to a business, does not make his allegations frivolous. Therefore, Coradeschi has made non-frivolous allegations that he is an employee for purposes of § 7511 and is entitled to appeal his action to the MSPB. An evidentiary hearing is now appropriate to determine by preponderance of the evidence whether his position as an INS agent is the same as or similar to his position as a FAM. If by a preponderance of the evidence they are proven similar, the MSPB has jurisdiction to hear the merits of Coradeschi's appeal.

### III. CONCLUSION

Coradeschi petitions to us from the MSPB's finding that he failed to make non-frivolous allegations of jurisdiction. For the reasons stated above, we hold that Coradeschi made sufficient non-frivolous allegations that he is an employee for

purposes of § 7511 and MSPB jurisdiction.  We, therefore, grant his petition and remand to the MSPB for proceedings consistent with this opinion.

VACATED and REMANDED

Costs to appellant.